UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DEMICKO BILLIE THOMAS, | ) | CASE NO. C04-1091-JLR-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| PAUL SEWELL, et al., | ) | |
| | ) | |
| Defendants | ) | |

## INTRODUCTION

Plaintiff proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 action. Defendants moved for summary judgment. (Dkt. 60.) Instead of filing a brief in opposition to defendants' motion, plaintiff filed affidavits and supporting materials raising complaints about discovery matters and requesting a continuance to conduct further discovery pursuant to Federal Rule of Civil Procedure 56(f). (Dkts. 66, 67 & 74.) Defendants object to plaintiff's request for further discovery. (Dkt. 76.) Having reviewed the papers and pleadings submitted by the parties, it is recommended that plaintiff's request for a continuance under Rule 56(f) be DENIED and defendants' motion for summary judgment be GRANTED.

## FACTUAL SUMMARY

Plaintiff is an inmate at the Regional Justice Center (RJC) in Kent, Washington. He alleges claims pursuant to § 1983[1] against eight defendants: (1) Paul Sewell, legal librarian at the RJC;

---

[1] It also appears from the caption of the complaint that plaintiff wishes to maintain claims under 42 U.S.C. §§ 1985, 1986, and 1988. (*See* Dkt. 6.) However, there is no apparent basis for

REPORT AND RECOMMENDATION
PAGE -1

(2) Teri Hansen, programs administrator at the RJC; (3) Bob DeNeui, classifications and programs administrator supervisor at the RJC; (4) Mary Ann Morbley, programs coordinator at the RJC; (5) Craig Nelson, jail commander at the King County Jail in Seattle; (6) Reed Holtgeerts, jail commander at the RJC; (7) King County Jail; and (8) Merry Titus, librarian at the RJC. (Dkts. 6 & 32.)

Plaintiff alleges defendants committed a variety of acts negatively affecting his ability to represent himself *pro se* in a criminal proceeding. As such, his complaint may be construed as maintaining § 1983 claims based on alleged denial of access to the courts.

Plaintiff was granted *pro se* status in his criminal case on November 14, 2003. (Dkt. 62, Ex. A.) On March 29, 2004, plaintiff filed a grievance relating to the conditions of his housing unit and the alleged affect on his ability to present himself *pro se*. (Dkt. 6 at 10-16.) Plaintiff specifically complained about, *inter alia*, a high stress, noisy, and confrontational environment resulting from population increases, as well as limitations in supplies and research access for *pro se* litigants. *Id*. In responding to the grievance, defendant Hansen indicated that *pro se* inmates are generally housed in the same unit to assist staff in the delivery of supplies and library services and that population needs dictate whether a housing unit is "double bunked." (*Id*. at 17.) Hansen further responded to this grievance by outlining policies governing the provision of legal services to *pro se* inmates. *Id*.

On April 23, 2004, plaintiff obtained an order from the King County Superior Court ordering the King County Jail to permit his use of a telephone for the purpose of preparing for trial as a *pro se* defendant in a manner consistent with jail policy. (Dkt. 62, Ex. D.) On May 14, 2004, the Superior Court entered another order providing that plaintiff would receive one hour of access

---

claims under §§ 1985 or 1986, pertaining to cases involving a conspiracy to violate a person's civil rights, given that plaintiff makes no allegations of conspiracy. In addition, because § 1988 is the attorney fee provision that applies to § 1983 actions, the Court construes plaintiff's listing of § 1988 as a request for attorney fees if he is successful in this matter, rather than an independent claim for relief.

REPORT AND RECOMMENDATION
PAGE -2

to a telephone seven days a week through the completion of his trial.  (*Id.*, Ex. E.)  Plaintiff subsequently moved the Superior Court to continue his trial for sixty days on the grounds that he was limited in his access to the telephone and to legal research.  (*Id.*, Ex. F.)  On June 1, 2004, the Superior Court denied this motion, finding plaintiff's telephone and legal research access sufficient.  *Id.*  On June 2, 2004, plaintiff withdrew his *pro se* status in his criminal case and was appointed counsel.  (*Id.*, Ex. G).  However, on August 27, 2004, plaintiff once again moved and was granted leave to proceed *pro se*.  (*Id.*, Ex. I.)

On September 2, 2004, plaintiff filed a grievance asserting that he was denied copies of documents needed to comply with filing deadlines in his criminal case.  (Dkt. 6 at 14-20.)  In responding to this grievance, defendant Titus indicated that plaintiff failed to provide the required form for copy services and failed to provide written confirmation of a court deadline.  (Dkt. 63, Ex. B.)  On September 17, 2004, a new attorney filed a notice of appearance on plaintiff's behalf in his criminal case.  (Dkt. 62, Ex. I.)  Plaintiff subsequently filed additional grievances relating to legal services.  In a November 4, 2004 grievance, plaintiff complained that Titus had limited his ability to research and print out cases.  (Dkt. 63, Ex. C.)  In responding to this grievance, Titus stated that she ended a research session with plaintiff in order to begin scheduled sessions with other inmates.  *Id.*  A November 15, 2004 grievance also asserts limitations on plaintiff's ability to research, including a malfunctioning printer and the fact that he did not receive certain books requested from the law library.  (*Id.*, Ex. D.)  Defendant DeNeui responded to this grievance by stating that, although the printer was out of order, plaintiff had access to a laptop and legal books, that inmates have access to specific law books for limited periods of time on a first come, first serve basis, and that plaintiff had the books in question at the time of the response to the grievance.  *Id.*[2]

---

[2] Plaintiff also provides a January 13, 2004 grievance raising questions as to legal mail and copies, and containing a response from Titus.  (Dkt. 32 at 20.)  However, rather than asserting that this grievance relates to an incident pertinent to his claims, he appears to have attached this

REPORT AND RECOMMENDATION
PAGE -3

Defendants assert that inmates proceeding *pro se* in their criminal case have access to a laptop computer two hours a week, versus the one hour a week provided for civil *pro se* matters, and have access to a cart containing legal materials on an ongoing basis. (Dkt. 63, ¶¶ 5-6.) Inmates may print out cases from the laptop and may request that the law library provide particular cases or books. (*Id.*, ¶¶ 5-11.) Defendant Paul Sewell, who has a law degree, provides assistance to *pro se* inmates at the RJC, and defendant Titus fills in when Sewell is on vacation. (*Id.*, ¶¶ 3 and 6.) Defendants note that plaintiff received over sixty hours of access to a laptop and cart with legal materials from November 2003 through November 2004, and printed out or had the law library print out hundreds of cases during that time period. (Dkt. 61, ¶¶ 15-19 and Exs. B-D.)

## PROCEDURAL SUMMARY

Plaintiff filed his initial complaint in this matter in May 2004. (Dkt. 6.) After defendants answered plaintiff's complaint, the Court established a discovery deadline of October 4, 2004. (Dkt. 19.) On October 5, 2004, plaintiff filed an "emergency motion" to stay proceedings and to extend deadlines to permit him to complete discovery. (Dkt. 21.) Plaintiff also moved for leave to file a supplemental complaint regarding actions that had occurred since the filing of his initial complaint. (Dkt. 23.) On October 21, 2004, the Court issued an order granting plaintiff leave to file a supplemental complaint and extending the discovery deadline by sixty days to December 10, 2004. (Dkt. 30.) Plaintiff sent his first set of written discovery requests to defendants on or about November 5, 2004 (*see* Dkt. 59 at 2) and filed a supplemental complaint on November 15, 2004 (Dkt. 32).

On December 10, 2004, plaintiff filed a motion to compel, a motion to continue the case schedule, a motion to conduct oral depositions, and a request for an order issuing subpoena duces tecum. (Dkts. 35-37 & 40). In responding to the motion to compel, defendants indicated that plaintiff had failed to make arrangements for depositions. (Dkt. 44.) Plaintiff subsequently

---

grievance merely "[t]o provide the reviewer with something to go off, as to Ms. Titus's, [stet] behavior." (*Id.* at 6.)

submitted an amended motion to compel, along with, *inter alia*, a declaration regarding his interest in conducting depositions. (Dkts. 48 & 53.)

The Court granted in part plaintiff's request to continue the case schedule, setting a new discovery deadline of February 10, 2005. (Dkt. 55.) The Court denied plaintiff's motion to conduct oral depositions, indicating that the parties should confer and cooperate on this issue, granted in part plaintiff's request that the Court issue a subpoena duces tecum, and denied plaintiff's amended motion to compel upon finding that defendants' untimely response to plaintiff's first discovery requests, on December 20, 2004, was not egregious conduct. (Dkts. 56 & 59.)

On March 4, 2005, defendants filed their motion for summary judgment. (Dkt. 60.) In response, plaintiff requested a continuance pursuant to Rule 56(f). (Dkts. 66 & 67.) In support of his request for a continuance, plaintiff submitted several documents showing his attempts to pursue additional discovery. (Dkt. 66 & Dkt. 67, Exs. A-C.) Finding his request for a continuance insufficiently supported, the Court granted plaintiff leave to file an amended pleading complying with the requirements of Rule 56(f). (Dkt. 72.) The Court also noted that plaintiff failed to explain why he served a second set of written discovery requests after the February 10, 2005 discovery cut-off. *Id.* Plaintiff subsequently submitted an amended pleading pursuant to Rule 56(f) (Dkt. 74), to which defendants objected (Dkt. 76).

DISCUSSION

A.   Plaintiff's Request for Continuance Under Rule 56(f)

Rule 56(f) permits a party to request a continuance to conduct further discovery in order to obtain evidence to oppose a summary judgment motion. The rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

The Ninth Circuit "generally disfavor[s] summary judgment where relevant evidence

remains to be discovered." *Klingele v. Eikenberry*, 849 F.3d 409, 412 (9th Cir. 1988). However, a party opposing a summary judgment motion must "show that additional discovery would uncover specific facts which would preclude summary judgment." *Maljack Prods., Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 888 (9th Cir. 1996). Also, a Rule 56(f) request may be denied if the party requesting a continuance did not seek discovery diligently. *See Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523-24 (9th Cir. 1989) (upholding refusal of Rule 56(f) request where movant had been granted an additional month to conduct discovery).

      Here, plaintiff asserts that the deposition testimony he seeks would be dispositive of pivotal questions in this matter, including: (1) the individuals directly involved in the deprivation of his constitutional rights; (2) the form of communication taking place prior to and during the time he filed his initial grievances; (3) whose acts resulted in the violation of the King County Superior Court order; and (4) the extent to which he sought administrative remedy before filing his complaint. He also notes his intent to retrieve a Superior Court transcript in which defendants' counsel purportedly stated on the record that the RJC had not complied with an order of that court. However, as discussed below, plaintiff fails to show or even allege a constitutional injury resulting from defendants' alleged interference with his access to the courts. Even if additional discovery did produce the above-described information, that information would not prevent summary dismissal of plaintiff's claims based on the absence of a constitutional injury.

      Plaintiff also asserts his diligent pursuit of discovery in this matter in support of his request for a continuance. He submits several declarations showing his requests for assistance and cooperation in the scheduling of depositions. Yet, all but one of those declarations are dated after the final February 10, 2005 discovery cut-off. (Dkt. 74, Ex. B (December 12, 2004 declaration to defendants' counsel); Ex. C (February 15, 2005 declaration to defendant Holtgeerts); Ex. D. (February 18, 2005 declaration to defendants' counsel; Ex. E (March 18, 2005 declaration to defendants' counsel); and Ex. F (April 1, 2005 declaration to defendants' counsel)). Further, even though he submitted one timely declaration of this sort, defendants point to the absence of any

REPORT AND RECOMMENDATION
PAGE -6

record that plaintiff at any time made arrangements for a court reporter and room, or set up dates and times to take depositions. (Dkt. 77, ¶ 10 & Dkt. 78, ¶¶ 1-4.)

Plaintiff also submitted his second set of written discovery requests after the discovery cut-off. In responding to the Court's inquiry as to the reason for this delay, plaintiff notes his efforts in attempting to correspond with defendants as to the scheduling of depositions, the Court's denial of his motion to conduct depositions, and defendants' lack of cooperation in making accommodations for depositions. Yet, none of these factors – all relating to depositions – explain why plaintiff submitted written discovery requests in an untimely manner. Plaintiff also asserts that defendants' initial production of documents was late, voluminous, and replete with objections and assertions of privilege and the work product doctrine. However, plaintiff fails to establish that the volume of defendants' response or the content of their objections were improper and, although untimely, the fact that defendants produced documents on December 21, 2004 does not suffice to explain plaintiff's failure to submit a second request prior to the February 10, 2005 discovery deadline.

Given the above, as well as the two extensions of the discovery deadline in this case, the record does not support plaintiff's assertion of diligence. Instead, plaintiff's lack of diligence provides further support for the denial of his Rule 56(f) request. *See*, *e.g.*, *Mackey*, 867 F.2d at 523-24.

B.   <u>Defendants' Summary Judgment Motion</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-23. "[A] party opposing a properly supported motion for summary

judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citing Rule 56(e)).  A plaintiff's verified complaint may be considered in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987).

Defendants raise several arguments in their motion for summary judgment, including that plaintiff fails to show personal participation by several defendants, that *Heck v. Humphrey*, 512 U.S. 477 (1994), mandates dismissal of plaintiff's claims, that plaintiff failed to exhaust his administrative remedies, and their entitlement to qualified immunity.  However, the Court concludes that it need only address the dispositive argument that plaintiff's claims fail based on the absence of a constitutional injury.

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  This right "'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'"  *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).  However, "the Constitution does not guarantee a prisoner unlimited access to a law library.  Prison officials of necessity must regulate the time, manner, and place in which library facilities are used." *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985).

To establish an access to the courts violation, a prisoner must show that he or she suffered an actual injury. *Lewis*, 518 U.S. at 349.  That is, plaintiff must provide specific examples in which he "'was actually denied access to the courts.'" *Allen v. Sakai*, 48 F.3d 1082, 1090 (9th Cir.1994) (quoting *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989)).  Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests[.]" *Lewis,* 518 F.3d at 362.

Here, defendants maintain that plaintiff has not shown or even alleged any injury to himself other than inconvenience or annoyance. The Court agrees. Plaintiff has pointed to no prejudice he experienced with respect to contemplated or existing litigation as a result of defendants' alleged actions. In particular, he fails to support his vague allegation that he was inhibited from complying with filing deadlines in September 2004. Moreover, any alleged delays plaintiff may have experienced in receiving legal materials or assistance appear to have resulted from an application of reasonable prison regulations, as well as problems – such as a printer breaking down – beyond defendants' control. Finally, although plaintiff contends that defendants failed to "acknowledge" the Superior Court order regarding telephone access (Dkt. 6 at 6), he fails to show that any restrictions on his telephone access resulted in actual injury or were otherwise unreasonable. In fact, a subsequent Superior Court order found plaintiff's telephone and legal research access sufficient. (Dkt. 62, Ex. F.)

In sum, the Court finds that plaintiff has not shown or even alleged that he suffered an injury of constitutional significance. Accordingly, his access to the courts claims should be summarily dismissed.

## CONCLUSION

For the reasons described above, the Court recommends that plaintiff's request for a continuance under Rule 56(f) be DENIED and defendants' motion for summary judgment be GRANTED. A proposed order accompanies this report and recommendation.

DATED this  12th  day of July, 2005.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -9